## PEOPLE *v.* ORR.

1. CRIMINAL LAW—TRIAL—FAILURE TO INSTRUCT AS TO BURDEN OF PROOF REVERSIBLE ERROR.

   In a prosecution under Act No. 98, Pub. Acts 1921, for causing the death of another by reckless driving of defendant's automobile, failure of the trial judge to give defendant's requested instruction relative to burden of proof was reversible error, notwithstanding an excellent instruction on presumption of innocence.

2. HOMICIDE—NEGLIGENT HOMICIDE IS BASED ON ORDINARY NEGLIGENCE.

   Negligent homicide, as provided by Act No. 98, Pub. Acts 1921, is based on negligence, ordinary negligence, so-called.

As to effect of knowledge of situation requiring the exercise of ordinary care and diligence to avert injury to another, see annotation in 69 L. R. A. 516.

3. SAME — CONVICTION OF MANSLAUGHTER INSTEAD OF NEGLIGENT HOMICIDE IMPORTANT IN VIEW OF DIFFERENCE IN PENALTY.

Whether defendant, charged with causing the death of another by the reckless driving of his automobile, suffer conviction of manslaughter or of negligent homicide makes some difference to him, in view of the fact that in the former the maximum penalty is 15 years, while in the latter it is 5 years.

4. SAME — NECESSARY ELEMENTS TO SUPPORT CHARGE OF MANSLAUGHTER.

In order to support a charge of manslaughter, three necessary elements must be found: (1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

5. SAME — MANSLAUGHTER AND NEGLIGENT HOMICIDE DISTINGUISHED.

Negligence, on which a charge of negligent homicide is based, is characterized chiefly by inadvertence, thoughtlessness, inattention, and the like, while wantonness or recklessness, in effect wilfulness, on which a charge of manslaughter is based, is characterized by wilfulness.

6. SAME — IN ABSENCE OF SHOWING OF WILFULNESS DEFENDANT SHOULD BE CHARGED WITH NEGLIGENT HOMICIDE.

Where there was no evidence to show that, at the time defendant attempted to drive his automobile around cars stopped near the top of a hill, it was apparent to him that his attempt was likely to prove disastrous to another, although he was unable to pass before a car came over the top of the hill, and his car crashed into another, causing the death of an occupant thereof, there was no element of wantonness, or recklessness, in effect wilfulness, shown, on which to base a charge of manslaughter, and under the circumstances defendant should answer the charge of negligent homicide and not manslaughter.

WIEST and SHARPE, JJ., dissenting.

Exceptions before judgment from Marquette; Flannigan (Richard C.), J. Submitted January 12, 1928.

(Docket No. 125, Calendar No. 33,414.)    Decided July 24, 1928.

John E. Orr was convicted of involuntary manslaughter. Reversed.

*M. J. Sherwood,* for appellant.

*William W. Potter,* Attorney General, *H. J. Horrigan,* Assistant Attorney General, and *Clarence E. Lott,* Prosecuting Attorney, for the people.

SHARPE, J. (*dissenting*).    In denying defendant's motion for a new trial, the trial court stated the facts here presented as follows:

"On a hillside, near the top of the hill, on a cement road between Negaunee and Marquette, known as M-35, a Chevrolet car ran out of gasoline and stopped.

"The Chevrolet was traveling from Negaunee towards Marquette.    A Hudson car, traveling in the same direction, drew up behind the Chevrolet and stopped.    A Buick car, also traveling in the same direction, came to a stop behind the Hudson car.    The three cars were standing on the right-hand side of the center of the traveled part of the highway.    The Hudson and Buick cars were waiting for the traffic against them to clear so they might safely proceed around and to the left of the stalled Chevrolet.

"The deceased, Helen Rohrborn, was a passenger in the Buick.    It was owned and driven at the time by one Charles Brandt.

"The defendant was driving a high-powered Marmon roadster, from Negaunee, with Marquette as his destination.    While the Buick was standing, as related, he ran into its rear.    Both cars were badly. wrecked, and Helen Rohrborn, who was sitting in the Buick at the time of the collision, was so grievously injured that she shortly died.    The collision occurred between daylight and darkness on the evening of September 12, 1926.

"As the defendant was approaching the Buick car he could not see the road ahead beyond the top of the hill.

His intention was to pass to the left and around the Buick and the other standing cars unmindful that a car traveling towards Negaunee might block his way. Before he reached the Buick car another car traveling against him came over the hill.    There was not sufficient room to pass between the approaching car and the Buick.    He could not stop in time to avoid hitting either the approaching car or the Buick.    He made an effort to pull out to the right of the Buick, but failed.    He claims he was unable to stop because both the service and emergency brakes of the Marmon car were out of order.

"On the theory the defendant drove his car at a rate of speed that was unreasonable and improper having regard to the traffic then on the highway and the safety of the public; and so as to endanger the life of the deceased, and that he did so wilfully, wantonly, negligently and recklessly, he was brought to trial on an information charging him with the offense of manslaughter.    Whether, under the evidence, he was guilty of manslaughter or of negligent homicide, was submitted to the jury.    He was convicted of manslaughter, and this is a motion to vacate the verdict and for a new trial."

1. Error is assigned on the denial of the motion of defendant's counsel for a directed verdict, made at the conclusion of the people's proofs and again when the proofs were closed.    It was based largely upon the claim of the defendant that the proofs would not justify a finding that he was driving at a rate of speed exceeding 35 miles an hour, the maximum then permitted by law.    But that is not the sole test to be applied.    It leaves out of consideration the question of due care.    The rule to be applied was properly stated by the trial judge in his charge, as follows:

"It was the duty of the defendant to drive and operate the car he was driving at a rate of speed that was reasonable and proper in view of the traffic and use of the road and all the circumstances and conditions which existed at the time and place of the accident."

It will serve no useful purpose to review the testimony.    We have read it with care, and are satisfied that it justified the verdict rendered.    See *People* v. *Barnes,* 182 Mich. 179; *People* v. *Schwartz,* 215 Mich. 197; *People* v. *Ryczek,* 224 Mich. 106; *People* v. *Campbell,* 237 Mich. 424.

2. Several of the occupants of the three cars which were standing on the highway at the time of the collision were asked, and permitted to state over defendant's objection, what effect the impact had upon them. This was clearly a part of the *res gestæ.*    It also aided the jury to reach a conclusion as to the force with which defendant's car struck that in which the deceased was riding, and might be considered by them in determining the speed at which he was driving and the care he was exercising at that time.

3. Several witnesses were permitted, over defendant's objection, to testify as to the speed at which defendant was driving as he approached the Buick car.    They all testified that they had driven cars; that they had some judgment as to the speed at which one was moving, and believed they were able to estimate the rate of speed at which the car driven by defendant was traveling as it approached that with which it came in collision.    We find no error in the admission of this proof.    See *People* v. *Schwartz, supra.*

4. In his instructions to the jury the trial judge said:

"The defendant is presumed by the law of this State to be innocent of both of these offenses charged against him in this case.    That presumption came right into this court room and it has stayed with the defendant. It stands by him.    It remains with him from the beginning all the way through to the end of this trial; and it is of such virtue that it demands at the hands of the jury a verdict of not guilty in this case, unless you find him guilty of either one or the other of the offenses defined, from the evidence in the case, beyond

a reasonable doubt. And every single fact, circumstance and condition necessary to make out the guilt of the defendant of either of these offenses must be established by the evidence beyond a reasonable doubt. And the entire field of the evidence, the entire case, when viewed by you from all four corners, must admit of no reasonable theory of innocence, but point only to the theory of guilt in order to justify conviction. If you find that the testimony, the evidence in this case, presents an innocent theory as well as a guilty theory, the jury are obliged under the law to adopt the innocent theory."

It is urged that in this instruction there was no reference to the burden of proof which is cast upon the prosecution in every criminal case. While the words "burden of proof" were omitted, we think the instruction very clearly informed the jury as to the facts which they must find in order to convict. While defendant's counsel had preferred a proper request on the necessity of such proof, we have no doubt that the instruction as given fully informed the jury of their duty in this respect.

5. Error is assigned upon the following from the charge:

"Involuntary manslaughter is where a person, in the commission of an unlawful act, or in the commission of a lawful act in an unlawful manner, unintentionally kills another. The defendant is charged with involuntary manslaughter."

It is urged that our statutes make no distinction between voluntary and involuntary manslaughter; that under this definition the jury may have been led to believe that—

"the law was that if this defendant had committed any unlawful act at the time of this accident, that is, if he had failed to observe any part of the vehicle law of this State and had unintentionally caused the death of Miss Rohrborn, he was guilty of involuntary manslaughter."

243—Mich.—20.

The definition given of manslaughter is in line with what was said in *People* v. *Townsend*, 214 Mich. 267 (16 A. L. R. 902). Taken as a whole, the charge very fully instructed the jury as to the nature of the offense and the proofs necessary to sustain it.

6. The verdict as announced was "guilty of involuntary manslaughter." As entered in the journal of the court it reads, "guilty of manslaughter." The statute makes no distinction in providing for the punishment on conviction thereof. There was no error in recording it as stated.

7. The jury were instructed that they might find the defendant guilty of involuntary manslaughter or negligent homicide. As the defendant was convicted of the former, this assignment need not be further considered.

The other errors complained of have received careful consideration. They do not merit discussion. The defendant had a fair and impartial trial. He was ably defended.

The exceptions should be overruled. The trial court should proceed to sentence.

WIEST, J., concurred with SHARPE, J.

CLARK, J. Although defendant requested it, no instruction was given the jury relative to burden of proof. This is reversible error. The situation was not met by giving an excellent instruction on presumption of innocence. Defendant is entitled to a new trial, and that being so, another matter should be considered. In the trial, counsel for defendant did not contend that his client had not been guilty of wilfulness, wantonness, and recklessness, so-called gross negligence, as distinguished from negligence, in effect, that there was no evidence to support the charge of manslaughter, but he makes that contention in this

court, and that, doubtless, would be his position in a new trial.

The evidence made a case of negligent homicide for the jury, which case is based on negligence, ordinary negligence so-called, as provided by Act. No. 98, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 15226 [2]). Whether the defendant suffer conviction of manslaughter or of negligent homicide makes some difference to him.    In the former the maximum penalty is 15 years, and in the latter 5 years.

The charge of manslaughter is here without evidential support.    26 Mich. Law Rev. 820.    Before defendant may be found guilty of wilfulness, or of wantonness and recklessness, which in effect are wilfulness, three necessary elements must be found according to note 69 L. R. A. 516; and text 20 R. C. L. p. 145, heretofore approved by this court:

(1)  Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

(2)  Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

(3)  The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

The third element at least is wholly lacking.    There is no evidence to indicate that when defendant attempted to pass the standing cars it must have been apparent to him, having an ordinary mind, that his attempt was likely to prove disastrous to another. The consequence of disaster was as likely to fall on defendant as upon any other.    Just before the coming of defendant's car, August Mellin, husband of the woman at the wheel of the parked Hudson car, had driven a car around and past the stalled Chevrolet. He had done successfully (as had a number of other drivers) practically the same act that defendant at-

tempted.    Defendant was mistaken in thinking he had time and opportunity to pass the parked cars. But his act, like that of Mr. Mellin and the other drivers, was not wilful or wanton.    At most, a jury might find that defendant did not use due care—was negligent.

It is common error to think that because the result of a negligent act is dire the act itself is wanton. Negligence is negligence be it much or little.    The difference between negligence and wilfulness or wantonness is not in degree but in kind.    Negligence is characterized chiefly by inadvertence, thoughtlessness, inattention, and the like, while wantonness or recklessness, in effect wilfulness, is characterized, as the words imply, by wilfulness.

We need not pursue the question, as authorities on it are abundant and accessible.    Defendant should answer the charge of negligent homicide, not manslaughter.

Conviction set aside.    New trial ordered.

NORTH, FELLOWS, and MCDONALD, JJ., concurred with CLARK, J.

The late Chief Justice FLANNIGAN did not sit.

The late Justice BIRD took no part in this decision.