PEOPLE v PITTINGER

Docket No. 54854. Submitted February 10, 1981, at Lansing.—Decided
April 22, 1981.

Jane Pittinger pled nolo contendere to a charge of involuntary
manslaughter, Oakland Circuit Court, Richard D. Kuhn, J. She
appealed to the Court of Appeals, and the people moved to
affirm the decision of the lower court, which motion was
granted. Defendant then sought leave to appeal to the Supreme
Court which, in lieu of granting leave to appeal, remanded the
case to the Court of Appeals for plenary consideration, 409
Mich 939 (1980). Defendant alleges that the evidence adduced
at her preliminary examination was insufficient to justify bind-
ing her over for trial and that the magistrate erred in admit-
ting evidence of blood alcohol test results. *Held:*

1. Defendant, by pleading nolo contendere, waived her right

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 501.

Plea of nolo contendere or non vult contendere. 89 ALR2d 540.

[2] 40 Am Jur 2d, Homicide § 70.

[3] 40 Am Jur 2d, Homicide § 7.

[4] 7A Am Jur 2d, Automobiles and Highway Traffic § 296 *et seq.*

What constitutes driving, operating or being in control of motor
vehicle for purposes of driving while intoxicated statutes. 93
ALR3d 7.

Homicide by automobile as murder. 21 ALR3d 116.

What amounts to negligence within meaning of statutes penalizing
negligent homicide by operation of a motor vehicle. 20 ALR3d
473.

Driving under the influence, or when addicted to the use, of drugs
as criminal offense. 17 ALR3d 815.

[5-7] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 305-307, 377-
380.

Necessity and sufficiency of proof that tests of blood alcohol concen-
tration were conducted in conformance with prescribed methods.
96 ALR3d 745.

Duty of law enforcement officer to offer suspect chemical sobriety
test under implied consent law. 95 ALR3d 710.

Admissibility in criminal case of evidence that accused refused to
submit to scientific test to determine amount of alcohol in system.
87 ALR2d 370.

to challenge any nonjurisdictional defect in binding her over for trial. In addition, her plea was supported by ample evidence establishing her guilt of the crime charged.

2. Evidence of defendant's blood alcohol test results was properly admitted during her preliminary examination. Defendant did not object to the use of the results and in fact stipulated to the blood alcohol level, thus waiving any claim that the use exceeded the scope of her consent to the test.

Affirmed.

1. CRIMINAL LAW — NOLO CONTENDERE — GUILTY PLEAS — WAIVER.

A plea of nolo contendere, like a guilty plea, constitutes a waiver of a defendant's right to challenge nonjurisdictional defects concerning whether the government can actually prove its case.

2. HOMICIDE — INVOLUNTARY MANSLAUGHTER.

A person who causes the death of another as a result of negligence which is gross, wanton or wilful, or criminal, indicating a culpable indifference to the safety of others, is guilty of involuntary manslaughter.

3. HOMICIDE — INVOLUNTARY MANSLAUGHTER.

The elements necessary for determination of a person's wilfulness in causing the death of another are: (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) omitting to use such care and diligence to avert the threatened danger where, to the ordinary mind, it must be apparent that the result is likely to prove disasterous to another.

4. HOMICIDE — MANSLAUGHTER — AUTOMOBILES — DRIVING WHILE INTOXICATED.

The operation of a motor vehicle inherently requires the exercise of ordinary care and diligence to avert injury to others; it is gross and culpable negligence for an intoxicated person to guide and operate an automobile upon a public highway, and, where death to another results, such person is guilty of manslaughter.

5. CRIMINAL LAW — EVIDENCE — BLOOD ALCOHOL TESTS — BREATHALYZER TESTS — IMPLIED CONSENT — STATUTES.

The result of a blood alcohol test or a Breathalyzer test administered pursuant to the "implied consent law" is not admissible as evidence in a criminal prosecution other than for driving

under the influence of intoxicating liquor, for driving while impaired, or for causing the death or injury of another (MCL 257.625[a]; MSA 9.2325[1]).

6. CRIMINAL LAW — EVIDENCE — BLOOD ALCOHOL TESTS — SEARCH WARRANTS.

The results of blood alcohol tests are admissible as evidence in a criminal prosecution where the tests are conducted pursuant to a search warrant.

7. CRIMINAL LAW — EVIDENCE — BLOOD ALCOHOL TESTS — WAIVER.

An objection to the use of evidence of the results of blood alcohol tests in a criminal prosecution beyond the consent given by the subject of the tests is limited to the person actually tested, but where a defendant stipulates as to a particular blood alcohol level any claim that the use of such evidence exceeded the scope of consent to the test is waived.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Michael S. Surnow,* for defendant on appeal.

Before: CYNAR, P.J., and J. H. GILLIS and ALLEN, JJ.

J. H. GILLIS, J. On July 26, 1979, defendant was convicted on her plea of nolo contendere to a charge of involuntary manslaughter. MCL 750.321; MSA 28.553. She was sentenced to a term of 30 days in the county jail, placed on probation for two years (with costs of $400), and ordered to donate 200 hours of time to community service work. Defendant's initial appeal was disposed of by the grant of a motion to affirm the judgment of the lower court by this Court. The matter is again before this Court following remand by the Supreme Court for plenary consideration. *People v Pittinger,* 409 Mich 939 (1980).

The circumstances of the offense were brought out at defendant's preliminary examination. On February 17, 1978, defendant attended a wedding reception in Southfield where she met Daniel Reese. The two remained in one another's company from 6:15 p.m. until 7:20 p.m., when they left the reception together. During that interval Reese observed defendant consume one and a half drinks. The couple drove off in separate automobiles, with Reese following defendant. After dropping off defendant's mother, Reese and defendant proceeded in the direction of defendant's apartment, traveling westbound on Eight Mile Road. Reese testified that he observed defendant's vehicle cross Evergreen Road at about 30 miles per hour and then drift to the right onto a three-foot snowbank in front of a service station. The car fell off the end of the snowbank and into a vehicle driven by Norbert Schulz. Schulz died as a result of the injuries sustained.

Officer John Stickle of the Southfield Police Department testified that he arrived at the scene at about 7:50 p.m. Defendant was bandaged about the forehead and there was a slight odor of intoxicants on her breath. As he walked defendant to the police car, Officer Stickle observed that she was unsteady on her feet. Reese testified that defendant did not appear intoxicated, that her speech was normal, and that she had no difficulty walking. He testified that defendant did not drive erratically prior to the accident. Defendant was given a Breathalyzer test approximately an hour after the accident which showed her blood alcohol level to be .20 percent. Officer Stickle indicated that the road surface was dry and free of any skid marks. However, Daniel Reese stated that the snowbanks extended into the gutter of the street

and that there were ice patches one-third of the way into the right lane. Two other witnesses were uncertain as to the condition of the road, but both believed it to be dry and free of snow.

Defendant argues on appeal that the evidence adduced at the preliminary examination was insufficient to justify binding her over for trial. Her motion to quash the information was denied by the lower court.

A plea of nolo contendere, like a guilty plea, constitutes a waiver of a defendant's right to challenge nonjurisdictional defects. *Menna v New York,* 423 US 61; 96 S Ct 241; 46 L Ed 2d 195 (1975). Because the plea indicates a desire not to contest the issue of factual guilt, the defendant "waives all defects that go to whether the government can actually prove its case * * *." *People v Riley,* 88 Mich App 727, 730; 279 NW2d 303 (1979), *People v Hill,* 86 Mich App 706, 710-711; 273 NW2d 532 (1978). Therefore, defendant has waived any defect in the accuracy of the bind over.

Nonetheless, the lower court utilized the preliminary examination to establish the necessary factual basis for defendant's plea. GCR 1963, 785.7(3)(b)(ii), *People v Wirth,* 87 Mich App 41, 47; 273 NW2d 104 (1978). We therefore consider whether the examination provided support for a finding of defendant's guilt.

Involuntary manslaughter occurs when death results from negligence which is gross, wanton or wilful, or criminal, indicating a culpable indifference to the safety of others. *People v Campbell,* 237 Mich 424, 428; 212 NW 97 (1927). In *People v Orr,* 243 Mich 300, 307; 220 NW 777 (1928), the Supreme Court enunciated the three elements necessary to a finding of wilfulness or wantonness and recklessness:

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

"(2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

"(3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another."

See also *People v Florida,* 61 Mich App 653, 657; 233 NW2d 127 (1975).

The evidence presented at the preliminary examination was such that one could infer that defendant was driving in an intoxicated condition when the accident occurred. That inference permits a finding of gross negligence on the part of defendant.

"It is gross and culpable negligence for a drunken man to guide and operate an automobile upon a public highway, and one doing so and occasioning injuries to another, causing death, is guilty of manslaughter. It was unlawful for defendant to operate his automobile upon the public highway while he was intoxicated; made unlawful by statute, and wrong in and of itself, and it was criminal carelessness to do so and he is guilty of manslaughter, provided the death of Agnes Thorne was a proximate result of his unlawful act."

*People v Townsend,* 214 Mich 267, 273; 183 NW 177 (1921).

A finding of gross negligence comports with the standard of *Orr, supra.* The operation of a motor vehicle inherently requires the exercise of ordinary care and diligence to avert injury to others. Since one who is intoxicated is generally physically incapable of exercising such care and diligence while actually driving, prudence demands

that this exercise be made in the form of a decision not to drive. In the present case, Daniel Reese twice offered to transport defendant, but in each instance she declined. Had defendant accepted those offers or found an alternative way to get home, the threatened danger could have been averted. Further, the evidence was sufficient to support a finding that defendant's gross negligence was the cause of the accident that resulted in Norbert Schulz' death. Although there was conflicting evidence, a trier of fact could have concluded that the road surface was dry and that defendant, despite her low speed and the apparent lack of any immediate hazard, simply failed to maintain control over the vehicle. The plea of nolo contendere was supported by ample evidence establishing defendant's guilt of involuntary manslaughter.

Defendant, relying on *People v Keen,* 396 Mich 573; 242 NW2d 405 (1976), argues that the blood alcohol test results were improperly admitted into evidence at the preliminary examination. In *Keen,* the Supreme Court held that evidence of the results from blood alcohol tests administered pursuant to the "implied consent" statute, MCL 257.625a; MSA 9.2325(1), is not admissible in criminal prosecutions other than for driving under the influence of intoxicating liquor or driving while impaired. See also *People v Weaver,* 74 Mich App 53; 253 NW2d 359 (1977). The *Keen* decision has been applied to Breathalyzer tests used to determine blood alcohol levels. *People v Cutler,* 86 Mich App 118, 124; 272 NW2d 206 (1978).

We do not believe that the restriction in *Keen* is applicable to the facts of this case. The rationale behind *Keen* was that because the statute permitting such tests only refers to prosecutions for driving under the influence of intoxicating liquor

and driving while impaired, the consent given by a motorist is consent only for use in those types of cases.[1] *Keen, supra,* 581-586. Thus, the use in other prosecutions exceeds the scope of the consent given. *Id.,* 585.

However, blood alcohol test results are not otherwise suspect as evidence. Therefore, the admission of evidence of test "results in a manslaughter prosecution is not an error so basic that it never can be regarded as harmless * * *." *Cutler, supra,* 124. Admission is unrestricted when a test is conducted pursuant to a search warrant and not under the statute itself. *People v Cords,* 75 Mich App 415; 254 NW2d 911 (1977). Further, any objection to the use of blood alcohol test results beyond the consent given is limited to the person actually tested. *Worth v Dortman,* 94 Mich App 103, 112-113; 288 NW2d 603 (1979).

Here, no objection was made to the use of evidence of the test results at the preliminary examination. In point of fact, defense counsel stipulated that defendant "had a blood alcohol content level * * * of .20%".[2] By so stipulating, defendant waived any claim that such use exceeded the scope of her consent to the test. The test results were properly admitted into evidence at the examination and provide legitimate factual support for defendant's nolo contendere plea.

Affirmed.

---

[1] MCL 257.625a; MSA 9.2325(1) has since been amended to expressly permit use of evidence of such test results in prosecutions arising from the death or injury of another. 1978 PA 572, effective March 30, 1979.

[2] *"Mr. Robinson [Prosecuting Attorney]:*

* * *

"Thirdly, I believe there is a stipulation that Ms. Strews had a blood alcohol content level, as determined by a Breathalyzer test at 8:37 P.M., of .20% and that she did not drink between the time of the accident and the administration of the test.

*"Mr. Dewey [Defense Counsel]:* So stipulated, Your Honor."