PEOPLE *v*. LOOMIS.

1. CONSTITUTIONAL LAW—STATUTES—TITLE.
    Act No. 213, Pub. Acts 1897, amending 3 Comp. Laws, § 11507, is constitutional, as to objections that the act contains offenses not germane to the title and that it amends a statute without pointing out in the enacting clause the sections amended.

2. CRIMINAL LAW—CRUELTY TO CHILDREN—STATUTES—INFANTS.
    The statute covers cases of unreasonable and unlawful corporal punishment, as defined in *People* v. *Green*, 155 Mich. 524 (119 N. W. 1087, 21 L. R. A. [N. S.] 216).

3. INDICTMENT AND INFORMATION—CRUEL PUNISHMENT.
    An indictment for cruelly and unlawfully punishing a child is sufficiently specific in using the language of the statute defining the offense.

4. CRIMINAL LAW—CONTINUING OFFENSE.
    Proof of several distinct acts is not proper to show a continuing offense, although the distinct acts of cruelty under Act No. 213, Pub. Acts 1897, may be admissible to show the bad faith of respondent in punishing the child.[1]

[1] As to evidence of other crimes in criminal case, see note to *People* v. *Molineux* (N. Y.), 62 L. R. A. 193.

5. Same—Continuing Offense—Surplusage.

> Although it is technically incorrect to charge the offense as a continuing one, the *continuando* may be rejected as surplusage and the respondent tried upon such particular charge as the prosecutor may select.

Exceptions before judgment from Calhoun; North, J. Submitted April 22, 1910. (Docket No. 145.) Decided June 6, 1910.

John W. Loomis was convicted of cruelly punishing a child in violation of section 11507, 3 Comp. Laws. Reversed.

*Jesse M. Hatch* and *Louis C. Miller*, for appellant.

*John E. Bird*, Attorney General, and *Howard W. Cavanagh*, Prosecuting Attorney, for the people.

Blair, J. Defendant having been convicted of cruelly punishing a child, in violation of the provisions of section 11507, 3 Comp. Laws, seeks a reversal of the conviction upon exceptions before sentence. The information charges that respondent,—

"On the 1st day of September, A. D. 1908, and on divers other days and times between that day and February 19, 1909, at the township of Marengo, in the county of Calhoun aforesaid, having under his control and protection Ernest A. Holnagel, a boy 13 years of age, did then and there cruelly and unlawfully punish him, the said Ernest A. Holnagel, particularly while under his, the said J. W. Loomis' control and protection on, to wit, the 19th day of February, A. D. 1909, did then and there at the township aforesaid cruelly and unlawfully punish him, the said Ernest A. Holnagel, contrary to the form of the statute," etc.

As stated in respondent's brief:

"The errors relied upon are raised upon the record by a motion to direct a verdict, objection to the receipt of evidence, to the refusal of the court to charge as requested, to the charge of the court, and to the argument of the prosecuting attorney."

At the outset, respondent's counsel objected to the reception of any evidence under the information, for the reasons that:

(*a*) The information does not show how the alleged cruel and unlawful punishment was inflicted.

(*b*) The information did not state the particulars constituting the offense.

(*c*) The information did not allege any fact or facts constituting cruel or unlawful treatment.

(*d*) The statute under which the information is filed is unconstitutional and void.

We consider first the objection questioning the constitutionality of the act. The original act appears as Act No. 156 of the Public Acts of 1893. The act is entitled " An act to provide a penalty for cruelty to children." So far as the definition of the offense and the penalty are concerned, the act reads as follows:

" SECTION 1. *The People of the State of Michigan enact,* That any parent or guardian, or person under whose protection any child may be, who tortures, cruelly or unlawfully punishes, or wilfully, unlawfully, or negligently deprives of necessary food, clothing or shelter, or who wilfully abandons a child under sixteen years of age, or who habitually causes or permits the health of such child to be injured or his life endangered by exposure, want or other injury to his person, or causes or permits him to engage in any occupation that will be likely to endanger his health or deprave his morals, or who habitually permits him to frequent public places for the purpose of begging or receiving alms, or to frequent the company of or consort with reputed thieves or prostitutes, or by vicious training depraves the morals of such child, shall be punished by a fine of not less than five dollars nor more than fifty dollars or imprisonment in the common jail of the proper county not less than ten nor more than ninety days, or both, in the discretion of the court."

The act contained but one section. In 1897 an act was adopted entitled:

" An act to amend act number one hundred and fifty-six of the Public Acts of eighteen hundred and ninety-three, entitled 'An act to provide a penalty for cruelty to

children,' and to repeal all existing acts and parts of acts conflicting with the provisions of this act." Act No. 213, Pub. Acts 1897.

The language of section 1, defining the offense, except that the feminine pronoun is used in conjunction with the masculine, is identical with that quoted from the act of 1893. As to the penalty, the act of 1897 provides that the offender—

"Shall upon conviction be deemed guilty of a felony and punished by imprisonment in the county jail, or in the State prison or the State house of correction at Ionia at hard labor for not more than five years nor less than three months."

Section 2 repeals all conflicting acts. Except in the title, there is no reference to the amendatory character of the act; but it is in the form of an original enactment.

It is argued that the offense complained of is not included within the title of the act; that the act contains various offenses and provisions that are not germane to the title; and that, although the act purports by its title to be an amendatory act,—

"The act points out no section to be amended. The enacting clause purports to be an original act, but the title purports to be an amending statute. It violates section 25, article 4, and section 20, article 4, of the Constitution (1850). The amending statute must have an enacting clause pointing out the sections that are to be amended. *People* v. *Pritchard*, 21 Mich. 241."

We think the object of the law is properly expressed in its title, and that the provisions of the act are germane to such object. *People* v. *Kelly*, 99 Mich. 82 (57 N. W. 1090); *Robison* v. *Wayne Circuit Judges*, 151 Mich. 315 (115 N. W. 682). We are also of the opinion that the act is not in conflict with the constitutional provision that:

" No law shall be revised, altered or amended by reference to its title only; but the act revised and the section or sections of the act altered or amended shall be re-enacted and published at length."

The amended act contained only one section, so that the language of the title of the amendatory act, "to amend Act No. 156," as clearly stated the object as though the single section had been referred to. While it would have been in better form if the amendatory act had contained a statement in the enacting clause that the section in question was amended so as to read as follows, etc., as a matter of fact, the section as amended was re-enacted and published at length, and we perceive no conflict with the constitutional provision.

Was the offense for which respondent was tried and convicted properly charged in the information ? It is apparent that cruelly or unlawfully punishing a child is only one of several phases of the offense of cruelty to children rendering the offender liable to the penalties of the act, and we are of the opinion that the legislature intended by the provision, "cruelly or unlawfully punishes," to cover cases of unreasonable and unlawful corporal punishment as defined by this court in *People* v. *Green,* 155 Mich. 524 (119 N. W. 1087, 21 L. R. A. [N. S.] 216). Construing the cruel or unlawful punishment denounced in the statute as relating to corporal chastisement, we think the information was sufficiently specific in using the language of the statute in defining the offense. The information describes in the language of the statute the particular form of cruelty to children constituting the crime charged, and separating it from the other forms of the offense so as to inform the respondent with reasonable certainty of the accusation against him. 5 Enc. Pl. & Prac. p. 695; *People* v. *Glazier,* 159 Mich. 528 (124 N. W. 582).

It is also urged that the court erred in permitting the prosecution to show several distinct whippings. The prosecuting attorney stated the theory upon which proof of the different punishments was competent, as follows:

"*The Court:* Well, it is no more than right that the record should show the prosecutor's attitude, that it is not claimed that this particular whipping might possibly be excessive so as to be a violation of the statute; but it is one

of the acts leading up to the act specified by the prosecutor that took place on the 19th of February, 1909.

"*Mr. Cavanagh:* That is our position, your honor, that the continued acts culminating February 19, 1909, constituted cruel and unlawful punishment.

"*The Court:* The objection will be overruled.

"*Mr. Miller:* Exception.

"*Mr. Cavanagh:* I will say this, that in view of my position the proof of this one act was made on the theory that it was a continued offense, and if I had been compelled to elect at any time any particular offense I would have chosen the offense of February 19, 1909. My proof of this act was to show a continued offense."

The particular provision under consideration does not specify an offense continuous in its nature like other provisions of the section, and while repeated punishments at short intervals for unimportant offenses, taken together, might constitute cruel punishment, though no single punishment would, such course of cruel punishment should at least be specified in apt terms in the information. It was not competent for the prosecution, under the information and facts of this case, to prove separate and distinct whippings as together constituting the offense; evidence of such distinct acts was only admissible as bearing upon the good faith of the respondent in administering the punishment particularly relied upon. Upon this issue of respondent's good faith, previous punishments, not only during the period specified in the information, but prior thereto, were admissible. Ordinarily, prejudicial error will arise from the receipt of testimony upon an erroneous theory, when the testimony was admissible upon another lawful theory; but in this case the erroneous theory was made the basis of the people's case and of the jury's deliberation, and the evidence went to them as substantive proof of the offense charged. Although it was not technically allowable to charge the offense as a continuous one, we think that the *continuando* might properly be rejected as surplusage, and the case tried upon such particular charge as the prosecutor might elect. 22 Cyc. p. 369.

It is also urged that the court erred in refusing to give respondent's request to charge that—

"There is no evidence in this case showing that the respondent was a person having Ernest Holnagel under his protection, and therefore your verdict must be not guilty."

The court did not err in refusing this request, since, in our opinion, the evidence tended strongly to show, if, indeed, it was not conclusive, that respondent was such a person in the meaning of the statute.

What we have already said disposes of the important questions in the case, and those not discussed will not be likely to arise upon another trial.

The conviction is reversed, and a new trial ordered.

OSTRANDER, HOOKER, MOORE, and STONE, JJ., concurred.