*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. A. BELLIS, Minor.

UNPUBLISHED
June 30, 2022

No. 358582
Wayne Circuit Court
Family Division
LC No. 2021-000255-NA

Before: RONAYNE KRAUSE, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his minor child, CAB, under MCL 712A.19b(3)(g) (failure to provide proper custody and care despite financial ability to do so) and (j) (reasonable likelihood that child will be harmed if returned to parent). On appeal, respondent, through counsel, presents an argument that we find unclear. However, affording respondent the benefit of any doubt, we construe this argument as challenging both the trial court's finding of statutory grounds for termination and the trial court's conclusion that termination was in CAB's best interests. We affirm.

## I. BACKGROUND

This proceeding was commenced in the aftermath of respondent's girlfriend's child, LD, suffering severe and life-threatening injuries while alone in respondent's care. LD, who was two years old, required emergency treatment that included brain surgery, and he was hospitalized for a month. It was also discovered that LD had suffered a variety of other injuries, including bruises and cuts. Medical personnel determined that LD's injuries would have been sustained immediately prior to his arrival at the hospital, were inconsistent with any kind of household accident, and suggested blunt impact trauma. At his bench trial, respondent described LD as "basically like my second son," and he contended that he had no idea how LD sustained the injuries. A couple of months later, respondent physically assaulted CAB's mother in front of CAB, breaking her phone and inflicting bruises, and instructed CAB to curse at the mother. CAB was four years old at the time.

Following respondent's arrest for the assault, petitioner filed a petition requesting that the trial court take jurisdiction over CAB under MCL 712A.2(b)(1) and (2), and enter an order terminating respondent's parental rights to CAB under MCL 712A.19b(3)(g), (j), (k)(*iii*) (abuse of

-1-

the child or a sibling of the child involving battering, torture, or other severe physical abuse), and (k)(*v*) (abuse of the child or a sibling of the child involving life-threatening injury).[1] Following authorization of the petition, respondent was allowed supervised, virtual visits with CAB. CAB remained in the care of his mother, who was not named as a co-respondent.

At respondent's adjudication, he entered a no-contest plea regarding both jurisdiction and statutory grounds for termination, based on potential civil and criminal liability arising from his alleged physical abuse of LD. As a factual basis for the plea, the trial court relied on the Garden City Police Report detailing the alleged abuse committed by respondent against LD. On that basis, the trial court entered an order exercising jurisdiction over CAB under MCL 712A.2(b)(1) and (2), finding statutory grounds for termination satisfied by clear and convincing evidence under MCL 712A.19b(3)(g) and (j), and ordering that CAB remain in his mother's care.

A termination hearing was subsequently held, solely addressing whether termination of respondent's parental rights was in CAB's best interests. After the parties' closing arguments, the trial court agreed with petitioner and entered an order terminating respondent's parental rights to CAB. The court concluded that the testimony and exhibits established by a preponderance of the evidence that termination of respondent's parental rights was in CAB's best interests. Though the court noted respondent's stated bond with CAB, his active employment, and his continued efforts to maintain a relationship with CAB, it reasoned that "[t]he most important part of the testimony" was respondent's complete failure to proffer any explanation for LD's injuries. The court specifically reasoned that the severity of LD's injuries, along with respondent's plea and his lack of accountability for LD's injuries, also placed CAB at risk. The court stated that, although children must be considered individually for purposes of termination and no evidence was admitted to show that respondent ever mistreated CAB, how a parent treats one child is probative to how they may treat another. Therefore, the court concluded that "[t]he acts that happened to [LD] were so egregious [that] it warrants not allowing [respondent] access to anybody else's children, including his own." Furthermore, although the trial court acknowledged that CAB remained in the mother's care and that placement with a relative generally weighs against termination, it determined that this situation did not constitute placement with a relative under the applicable legal standards. This appeal followed.

## II. STANDARD OF REVIEW

In order to terminate parental rights, a trial court must first find that at least one of the statutory grounds for termination under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court must then also determine that termination is in the child's best interests. *Id*. The

---

[1] We note that CAB and LD are unrelated and therefore not "siblings." See *In re Hudson*, 294 Mich App 261, 265-266; 817 NW2d 115 (2011). There was no allegation that respondent physically harmed CAB. However, by the time respondent entered a no-contest plea in this matter, petitioner realized and informed the trial court that MCL 712A.19b(3)(k) was inapplicable to respondent. The trial court never made any findings regarding MCL 712A.19b(3)(k), so we will not discuss that subsection further.

best interests of the child need only be established by a preponderance of the evidence on the whole record. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court's best interests findings and statutory grounds findings are both reviewed for clear error. *Olive/Metts*, 297 Mich App at 40. Clear error exists when this Court "is left with a definite and firm conviction that" the trial court made a mistake. *In re Terry*, 240 Mich App 14, 22; 610 NW2d 563 (2000). Furthermore, "regard [must] be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Mota Minors*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (citation and quotation marks omitted).

### III. STATUTORY GROUNDS FOR TERMINATION

Respondent, through counsel, presents a confusing argument, phrasing the issue on appeal as, "was the trial court's permanent custody order reached without clear and convincing evidence of a single statutory basis to indicate that the best interest of the minor child would be termination of appellant father's parental rights?" At best, this appears to conflate the statutory grounds findings, which must be established by clear and convincing evidence, with the best interests findings, which need only be supported by a preponderance of the evidence. We are unable to discern from the brief filed on respondent's behalf any argument specifically pertaining to any particular statutory ground for termination, but rather a more general assertion that respondent was not proved to be an unfit parent. Nevertheless, in light of the important rights at stake, we choose to extend the maximum possible generosity and lenity to the respondent's brief. Therefore, affording respondent the benefit of the doubt, we construe this as a challenge to the trial court's finding that statutory grounds to terminate his parental rights were established under MCL 712A.19b(3)(g) and (j). We disagree.

Initially, because respondent entered a no-contest plea concerning statutory grounds for termination, he may not now challenge that finding on appeal. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) ("[A] [r]espondent may not assign as error on appeal something that [he or] she deemed proper in the lower court because allowing [him or] her to do so would permit [the] respondent to harbor error as an appellate parachute."). Nevertheless, we will consider whether the police report upon which the trial court relied could establish by clear and convincing evidence that either (1) respondent failed to provide CAB with proper care and custody despite being financially able to do so and would not reasonably be expected to provide proper care within a reasonable time, MCL 712A.19b(3)(g); or (2) respondent's conduct shows that CAB would be harmed if he were returned to respondent's care, MCL 712A.19b(3)(j).

As noted, the respondent's brief offers no argument identifiably specific to either statutory ground. Rather, it presents the argument that the injuries sustained by LD arose out of an isolated incident, respondent was never alleged to have committed any other acts of harm against CAB or any other child, he was consistently involved in CAB's life prior to the commencement of this case, and, bafflingly, CAB's "mother's parental rights were not terminated and there is nothing on this record that demonstrates she could not protect [CAB] if the need arose." We are uncertain whether the latter argument was intended to pertain to the best interests analysis, but the evidence that respondent assaulted CAB's mother in CAB's presence clearly proves that assertion both wrong and fundamentally misguided.

When a respondent pleads no contest, the trial court "shall not question the respondent, but, by some other means, shall obtain support for a finding that one or more of the statutory grounds alleged in the petition are true." MCR 3.971(D)(2). As noted, the trial court relied on the Garden City Police Report. The police report described the investigation into the injuries suffered by LD, including interviews with medical, emergency, and hospital personnel. LD had sustained a massive, nonaccidental blunt force trauma inconsistent with any possible household accident. In addition, further concerning injuries to LD were documented, including a history of recurring suspicious (and unexplained) bruising that had been noticed previously by daycare workers. LD's paternal grandmother had further noticed a pattern of LD acting scared of respondent and crying in his presence. Incredibly, respondent explained that he had been home alone with LD, feeding him pizza, stepped out of the room briefly, and simply found LD unresponsive upon his return. LD suffered the injuries during the first weekend he and respondent were alone together for the entire weekend. The report clearly shows that respondent's denial of wrongdoing was highly implausible and that he did have a history of abusing LD, albeit not as severely.

Given the facts from this report, in conjunction with respondent's no-contest plea, the trial court correctly found clear and convincing evidence to terminate respondent's parental rights. Specifically, because "[e]vidence of how a parent treats one child is evidence of how he or she may treat the other children," *Hudson*, 294 Mich App at 266, the allegations of respondent abusing LD are indicative of his potential to also harm CAB. Indeed, respondent's implausible claim to have no knowledge of what happened to LD, and the evidence of a pattern of other abuse culminating in LD's hospitalization, further show that CAB would likely be harmed if returned to respondent's care under MCL 712A.19b(3)(j). Moreover, "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Accordingly, we need not consider whether termination was also proper under MCL 712A.19b(3)(g).

To the extent respondent argues that statutory grounds for termination were not established by clear and convincing evidence, we disagree.

IV. BEST INTERESTS

The brief filed on respondent's behalf presents a somewhat clearer argument that the trial court erred by concluding that it was in CAB's best interests to terminate his parental rights. Nevertheless, we disagree.

"The trial court should weigh all the evidence available to determine the children's best interests." *White*, 303 Mich App at 713 (citation omitted). The court should consider factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (citation and quotation marks omitted). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). At the best-interests stage, the focus is on the child rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

The respondent's brief asserts that "extremely good cause" is the standard that must be met before parental rights may be terminated. However, in presenting that argument, it relies upon a criminal case that has nothing to do with termination of parental rights, does not contain the words "extremely" or "good" anywhere, and is seemingly only tangentially related because it involved a charge of cruelty to children. See *People v Hicks*, 149 Mich App 737; 386 NW2d 657 (1986). It is true, and well-established, that public policy favors preserving the family and upholding the rights of parents to the care, custody, and management of their children. See *In re B and J*, 279 Mich App 12, 18; 756 NW2d 234 (2008). However, when at least one statutory ground for termination is properly established by clear and convincing evidence, a parent is no longer considered fit, loses the right to custody and control of their child, and may be considered adversarial to the child. *Moss*, 301 Mich App at 86-88; *In re Trejo*, 462 Mich 341, 355-356; 612 NW2d 407 (2000); *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

The argument presented to us is that the trial court erred in concluding that termination was in CAB's best interests because it did not adequately consider that the incident with LD was isolated, with no other similar complaints ever made against him; he was consistently involved in CAB's life until recently and had a strong bond with the child; he never had any improper or abusive contact with CAB; and CAB's mother could protect CAB if necessary.[2]

We conclude that termination of respondent's parental rights was in CAB's best interests. Importantly, the trial court did explicitly consider factors weighing against termination from the available evidence, including respondent's testimony about having a strong bond and positive interactions with CAB, being gainfully employed, and making deliberate efforts to maintain a relationship with CAB. Furthermore, the trial court expressly recognized that "[CAB] was not injured in any way, shape or form." Nevertheless, for the reasons already discussed, we conclude that the trial court properly considered that the egregious nature of the injuries respondent inflicted upon LD, coupled with respondent's utterly implausible disavowals of any knowledge of those injuries, strongly suggested that termination was in CAB's best interests. The trial court also reasonably expressed concern about the relationship between respondent and CAB's mother, which included pending criminal charges against respondent and a personal protection order against respondent.

The trial court also recognized that CAB was placed with his mother, who was considered a safe and appropriate parent. The trial court correctly observed that a child's satisfactory placement with a relative weighs against termination. *Olive/Metts*, 297 Mich App at 43. However, the trial court also correctly recognized that a biological mother is not considered a "relative" for purposes of considering relative placement. *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016). Therefore, as the trial court found, it was not required to consider the fact that CAB was placed with his mother. In any event, there was evidence in the record that respondent had assaulted CAB's mother in CAB's presence, and the claim that CAB's mother could protect CAB from respondent resembles a tacit admission that CAB *needed* protection from him—a conclusion

---

[2] As previously discussed, it is unclear from the brief filed on respondent's behalf whether these points are made concerning the trial court's decision on statutory grounds for termination, best interests, or both.

that the record supports.  Importantly, no parent should be expected to have any need to do so, and no child should be placed in such a situation.  We conclude that the trial court did not clearly err in finding statutory grounds for termination satisfied or in concluding that termination was in the child's best interests.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Michael J. Kelly
/s/ Christopher P. Yates